

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN A. TOWNES, | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **NO. 10-1780** |
| | : | |
| JOHN E. POTTER, | : | |
| Defendant. | : | |
| | : | |

FILED

JAN 13 2012

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM OPINION**

Tucker, J.                                                          January 12 2012

Presently before the Court are the parties' cross Motions for Summary Judgment (Doc.

14,15), and the parties' respective Responses in Opposition thereto (Doc. 16).[1] For the reasons set

forth below, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's

Motion.

**I.   FACTUAL BACKGROUND**

The facts, construed in the light most favorable to the non-moving party, are as follows.

Plaintiff, Karen Townes, has been employed with the United States Postal Service ("USPS") for

more than 29 years. (Pl.'s Mot. Summ. J. 13; Def.'s Ex. G-J). USPS employs a Career Ladder

Program, which is "an approach to personnel staffing by which individuals are selected competitively

---

[1] The Court received Plaintiff's Memorandum in Response to Defendant's Motion for
Summary Judgment on April 22, 2011. The cover letter attached to Plaintiff's Response indicated
that Defendant also received a copy of the Response. However, Plaintiff's Response was not
docketed on ECF. By separate Order, the Court has directed the Clerk of Court to file Plaintiff's
Response as of April 22, 2011.



for entry into an occupational series and are promoted noncompetitively to positions within the series until they achieve . . . the highest level in the ladder." (Pl.'s Ex. 4, at 1). "Career ladders are established within an activity or function for selected occupational series of nonbargaining unit positions. Employees are selected for, and placed in, a position in the career ladder on the basis of their current knowledge, skills, and abilities (KSAs). They acquire higher level knowledge and skills through on-the-job training and other kinds of developmental experiences, and advance on the basis of demonstrated performance." (Pl.'s Ex. 4, at 1). Employees may not be promoted to the next position within a career ladder "sooner than 12 months after appointment or promotion to their current position." (Pl.'s Ex. 4, at 5). "Readiness to advance to the next higher level in the ladder must be documented on . . . the Qualifications Assessment Sheet." (Pl.'s Ex. 4, at 5). An employee promoted within his Career Ladder program is entitled to a five percent salary increase. (Pl.'s Ex. 4; Def.'s Ex. A, Part VI(C)(5)).[2]

Plaintiff applied and was promoted to a Career Ladder Position Labor Relations Specialist EAS-17 in July 2007. (Pl.'s Ex. 25; Def.'s Ex. D; Def.'s Ex. F). The notice advertising Plaintiff's new position indicated that the position was "A CAREER LADDER PROGRAM POSITION. . . . If filled at EAS-17, the successful applicant will be eligible for non-competitive promotion to EAS-19 after 18 months." (Def's. Ex. C).

Prior to receiving her Career Ladder Labor Relations Specialist EAS-17 position, Plaintiff had frequently applied for Labor Specialist positions, but was denied them because she lacked experience. (Pl.'s Ex. 25). In February 2006, Plaintiff filed a complaint with the Equal Employment

---

[2]Nonbargaining employees outside of the Career Ladder program, however, may receive promotion increases of from three to ten percent. (Pl.'s Ex. 1).

Opportunity ("EEO") office because she learned that other white and male employees were being promoted to Labor Specialist positions that she was denied. (Pl.'s Ex. 25). Plaintiff's EEO complaint was resolved in July 2006 by Acting Manager Janice Smith ("Smith"), and Plaintiff was detailed to Labor Relations on a training assignment. (Pl.'s Ex. 25). Plaintiff applied for the Labor Relations Specialist Position in February 2007, and began working in that position in July 2007. (Pl.'s Ex. 25).

In August 2008, after Plaintiff had completed thirteen months of training, her manager, Smith, requested that Plaintiff be promoted to EAS-19 with a ten percent salary increase. (Pl.'s Ex. 23; Pl.'s Ex. 25, Notice of Right to File). However, Human Resources Manager, Lisa Jordan ("Jordan"), declined the request because Plaintiff had not yet completed her eighteen months of training as required by the notice for her position. (Pl.'s Ex. 23). Smith resubmitted a promotion request for Plaintiff in January 2009, after Plaintiff's eighteen months of training was complete. (Pl.'s Ex. 23). Smith received no response from Jordan regarding the request, so Smith sent the necessary forms off for processing because she was informed that all promotions had to be made before a promotion freeze went into effect on January 17, 2009. (Pl.'s Ex. 23). On January 14, 2009, Jordan intervened, and delayed processing until she received supporting documentation for the promotion. (Pl.'s Ex. 11). Smith contacted Rick Acker, Area Labor Manager, who informed Smith that in support of the promotion request Plaintiff could give a statement indicating that she met the requirements for EAS-19. (Pl.'s Ex. 9). In response, on January 15, 2009, Plaintiff provided the following statement accompanying her promotion request: "I am requesting to be upgraded to a EAS Level 19 Labor Relations Specialist, as per my Career Ladder Appointment. I have completed my 18 months of training and feel that I am qualified for this upgrade as evidenced by my end of years reviews during this period. I have been acting in this capacity for the pas[t] 2 ½ years. I believe that

-3-

I have not only met, but exceeded the requirements of the position listed with the exception of EEO and MSPB as these functions are performed by the law department." (Pl.'s Ex. 9).

Jordan was uncomfortable with Plaintiff's short statement, and wrote to Rick Acker that her "concern was that the attached merely shows a macro d[e]scriptive rather than specific actions and specific trainings." (Pl.'s Ex. 9). Jordan then sent an e-mail to Smith requesting that she complete a qualifications assessment of Plaintiff to ensure that Plaintiff had met all of the KSA's for the EAS-19 position pursuant to the management instructions for the Career Ladder Labor Relations Specialist position. (Pl.'s Ex. 9). Smith submitted the assessment to Jordan. (Pl.'s Ex. 10). On January 16, 2009, via e-mail, Jordan resubmitted the promotion request with her approval, accompanied by the Career Ladder Program Qualifications Assessment for Plaintiff. (Pl.'s Ex. 11). The e-mail indicated that Plaintiff should be promoted with a five percent salary increase. (Pl.'s Ex. 11). Plaintiff was finally promoted on January 17, 2009. (Pl.'s Ex. 25, Notice of Right to File; Def.'s Ex. I).

On February 3, 2009, Plaintiff received a "PS Form 50" which indicated that her promotion was accompanied by a five percent, rather than a ten percent salary increase. (Pl.'s Ex. 24). Smith told Plaintiff that Jordan took issue with the ten percent salary increase. (Pl.'s Ex. 24). As a result, Plaintiff requested a meeting with Jordan to discuss the discrepancy (Pl.'s Ex. 24). After a number of cancelled meetings, Plaintiff met with Jordan on March 5, 2009, during which Jordan told Plaintiff that she could write a letter to her manager requesting reconsideration of her salary increase. (Pl.'s Ex. 25). Jordan also told Plaintiff "if she had to clean up or pick up after someone or not get a promotion she would pray about it to God but she wouldn't file a EEO Complaint." (Def.'s Ex. K, at 8, ¶ 24). Plaintiff submitted a letter to Smith requesting a ten percent salary increase on that same

-4-

day. (Pl.'s Ex. 22). Then, on March 9, 2009, Plaintiff submitted a letter to Jordan indicating that she had "received concurrence" from Smith to change her salary increase from five to ten percent. (Pl.'s Ex. 22).

Plaintiff initiated an EEO action on March 13, 2009 regarding the salary dispute. (Pl.'s Ex. 24, Notice of Right to File). On June 4, 2009, Jordan denied the reconsideration request, stating: "there is no postal regulation permitting me to change an EAS promotional increase that has been finalized." (Pl.'s Ex. 24). In the e-mail, Jordan also stated that she was "aware that an EEO has been filed regarding this issue and I am certain that you can understand that it would be inappropriate for me to comment any further on this issue." (Pl.'s Ex. 24).

Plaintiff's Motion for Summary Judgment also references several other employees at USPS. According to Plaintiff, Olivia Bodner ("Bodner"), a 51 year old white female labor specialist, was automatically promoted to a Level 19 after eighteen months without having to submit any documentation. (Pl.'s Resp. Mot. Summ. J. 5). Bodner received a three percent salary increase along with her promotion. (Def.'s Ex. K, at 6). Jordan also promoted Anthony Waters ("Waters"), a 51 year old black male, to Labor Relations Specialist with an 11.5% salary increase. (Pl.'s Resp. Mot. Summ. J. 6). Jordan placed Waters in the position of Acting Manager (Def.'s Ex. K, at 6). Waters' promotion was a competitive one, not a non-competitive promotion within the Career Ladder program. (Def.'s Ex. S). Finally, Shauntae Clifton, a 41 year old black female, was also promoted to a Level 19 Labor Relations Specialist position with a three percent salary increase without having to submit any documentation. (Def.'s Ex. 6).

Plaintiff initiated the instant action on April 22, 2011, claiming that her employer had discriminated against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, the

-5-

Age Discrimination in Employment Act, 29 U.S.C. § 621-634, and the Equal Pay Act, 29 U.S.C. 206(d).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir.

-6-

2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001).

## III.   DISCUSSION

### A.   Title VII Race and Sex Discrimination

Title VII protects employees from discrimination by their employers on the basis of race, color, religion, sex or national origin. 42 U.S.C. 2000e-2. A plaintiff relying on circumstantial evidence for her discrimination claim must satisfy the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the Plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Matckzak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997).

#### 1.   Race Discrimination

Plaintiff fails to establish a prima facie case of race discrimination. To establish a prima facie case of race discrimination, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. Texas Dept. Of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). An adverse employment action is one that

is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001). An adverse employment action must be "material." Schmidt v. Montgomery Kone, Inc., 69 F. Supp. 2d 706, 713 (E.D. Pa. 1999) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997)). "Not everything that makes an employee unhappy is an actionable adverse action." Young v. St. James Mgmt., LLC, 749 F. Supp. 2d 281, 289 (E.D. Pa. 2010). As a black female who received good reviews from her supervisor, Plaintiff meets the first and second prongs of the prima facie case. Unfortunately, Plaintiff flounders upon reaching the third and fourth prongs.

Here, Plaintiff argues that she suffered several adverse actions. First, she argues that she was forced to fill out paperwork before receiving her promotion to the EAS-19 Labor Relations Specialist position. The Court agrees with Defendant that being forced to complete paperwork before receiving a promotion is not an adverse employment action. The Court does not find this requirement to have "materially" altered Plaintiff's conditions of employment. Plaintiff does not offer evidence that her terms or conditions of employment suffered in any way as a result of having to fill out this paperwork. To the contrary, the paperwork led to a five percent raise and a promotion for Plaintiff.

Plaintiff also argues that she was discriminated against when she failed to receive the promotion to EAS-19 when she originally requested it in August 2008, and that when she finally did receive her promotion in January 2009, she was again discriminated against because she received a five percent, rather than a ten percent, raise. The Court finds that the failure to promote and a decrease in a raise are both adverse employment actions which affected Plaintiff's terms, conditions, and privileges of employment. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (describing an adverse employment action as one constituting a significant change in employment

-8-

status such as "hiring, firing, failing to promote, reassignment, . . . or a decision causing a significant change in benefits").

However, Plaintiff fails to meet her burden of demonstrating that these adverse employment actions give rise to an inference of unlawful discrimination. The notice advertising Plaintiff's Career Ladder position specifically indicated that if the position was filled at the EAS-17 level, "the successful applicant will be eligible for non-competitive promotion to EAS-19 after 18 months." Plaintiff applied for the position as an EAS-17, and therefore, this provision applied to her. Thus, Defendant conformed with this requirement by denying Plaintiff's promotion request after only thirteen months. Similarly, the Career Ladder Manual provides that employees promoted to the next level position in a Career Ladder receive a five percent salary increase. Therefore, Plaintiff received exactly the raise to which she was entitled. Because the evidence shows that Defendant was merely following its own regulations, a reasonable jury could not find an inference of discrimination based on these facts.

Plaintiff also compares herself with other employees in an attempt to prove an inference of discrimination. However, these attempts are also unsuccessful. In particular, Plaintiff compares herself to Olivia Bodner, a white female who was promoted to a Level 19 after eighteen months with a three percent raise without being required to fill out paperwork. First, the fact that Bodner received less of a raise than Plaintiff weighs against a finding that Plaintiff's treatment was discriminatory. Moreover, Plaintiff also points to Shauntae Clifton, a black employee who was promoted to a Level 19 without being forced to complete paperwork. The fact that Clifton, another black employee, was spared paperwork also weighs against an inference of discrimination in Plaintiff's case.

Therefore, Plaintiff fails to identify a genuine issue of material fact with regard to her race

-9-

discrimination claim, and Defendant's Motion will be granted in this regard.

### 2.    Sex Discrimination

Plaintiff is also unsuccessful in establishing a prima facie case of sex discrimination. The elements of Plaintiff's prima facie sex discrimination claim are identical to the elements of her race discrimination claim. That is, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. Burdine, 450 U.S. 248 (1981).

Once again, Plaintiff fails to demonstrate that she suffered an adverse employment action which would give rise to an inference of unlawful sex discrimination. First, as stated in the section above, Defendants merely followed their own Career Ladder procedures in providing Plaintiff a five percent raise, which negates rather than supports an inference of discrimination. Additionally, Plaintiff's comparisons to other male employees is insufficient to establish her prima facie case of sex discrimination. A plaintiff may establish a prima facie case of sex discrimination by demonstrating that she was treated less favorably than similarly situated employees of the opposite gender. Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 440 (E.D. Pa. 2001). Plaintiff compares herself to Anthony Waters, a black male who received an 11.5% raise when he was promoted to an EAS-19 Labor Relations Specialist position. However, this comparison fails because Plaintiff and Waters are not similarly situated. Waters's promotion was not through the Career Ladder Program. Instead, it was a competitive promotion. Because Waters and Plaintiff were promoted through different programs, they are not similarly situated. Additionally, Plaintiff asserts in her motion that Waters had a law degree, which would also preclude the Plaintiff from being

-10-

considered to be "similarly situated" to Waters. See, e.g., Hayes v. Daisy Const. Co., 144 Fed. Appx. 227, 228 (3d Cir. 2005) (explaining that the plaintiff was not similarly situated to workers with "additional skills that qualified them for a higher base pay rate"). Finally, Waters had managerial responsibilities which Plaintiff did not, which also prevents them from being considered similarly situated.[3] In light of the inadequacy of Plaintiff's comparison, Plaintiff's sex discrimination claim does not surpass summary judgment.

### B.    Age Discrimination

The Age Discrimination and Employment Act ("ADEA") prohibits age discrimination in employment against any person over age forty. 29 U.S.C. § 623(a)(1). ADEA claims also follow the McDonnell Douglas framework. In order to establish a prima facie case, Plaintiff must show that she: (1) is over forty; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995). This showing creates a presumption of age discrimination which the employer may rebut by stating a legitimate, nondiscriminatory reason for the adverse employment decision. Id. The plaintiff may then demonstrate that the employer's stated reason was merely pretext for discrimination. Id.

The contours of Plaintiff's age discrimination claim are not spelled out in her Motion for Summary Judgment or in her Response in Opposition to Defendant's Motion for Summary Judgment. In her EEO Investigative Affidavit, however, Plaintiff states that she believes her "age

---

[3]Correspondingly, Plaintiff's comparisons in her Motion for Summary Judgment to Michael Kulikowski are unsuccessful for the same reasons. Kulikowski is an employee with supervisory authority over Townes who was competitively promoted. Therefore, Kulikowski and Townes are also not similarly situated.

is a factor, as all employee[s] of the Human Resource Department who were older than me and who were selected for promotion . . . were granted 10% salary increases." (Def.'s Ex. K, ¶ 23); see also Pl.'s Ex. 25 ("Older Human Resource employees under Ms. Jordan's responsibility were promoted or approved for promotion by Ms. Jordan, with all recieving 10% salary increases."). As set forth in Brewer, the ADEA only protects those employees who are discriminated against in favor of younger, not older, employees. Therefore, Plaintiff does not state a viable claim of age discrimination in her affidavit, and summary judgment must be granted in favor of Defendant on Plaintiff's age discrimination claims.

### C.    Equal Pay Act

To establish a claim under the Equal Pay Act, the plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing "'equal work' - work of substantially equal skill, effort and responsibility, under similar working conditions." Stanzile v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (quoting E.E.O.C. v. Del. Dept. of Health and Social Servs., 865 F.2d 1408, 1413-14 (3d Cir. 1989)). Then, the burden of persuasion shifts to the employer to demonstrate one of the four affirmative defenses specified in the Equal Pay Act. Id. These affirmative defenses include: (1) a bona fide seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1).

Plaintiff has failed to meet the first step of the prima facie case. She and Waters do not do equal work -- Waters has management responsibilities while Plaintiff does not. Plaintiff herself admits that in 2006, Waters denied her training request as Acting Manager. (Pl.'s Ex. 25). Thus, Plaintiff and Waters do not perform equal work, and Plaintiff's Equal Pay Act claim cannot survive

summary judgment.

### D.    Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 339 (3d Cir. 2006). The anti-retaliation provision of Title VII "protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII." Id. at 341. "[T]he employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Id. (citing Clark Cnty. v. Breeden, 532 U.S. 268 (2001) (per curiam)). A plaintiff claiming retaliation under Title VII "must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). If Plaintiff establishes a prima facie case of retaliation, then the McDonnell Douglas burden shifting analysis applies, in which Defendant must show a legitimate, non-retaliatory reason for its conduct. Id. at 342. If Defendant makes this showing, Plaintiff must then demonstrate that the "employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id.

First, Plaintiff has presented evidence to establish that she was participating in protected activity, i.e., she filed an EEO complaint in February 2006, and again in March 2009. Second, the Court has already established that Plaintiff has presented sufficient evidence that adverse employment actions were taken against her. Specifically, Defendant denied Plaintiff a promotion

when asked, and gave her less of a raise than she requested. Jordan also denied Plaintiff's reconsideration request. However, Plaintiff still fails to establish a prima facie case of retaliation.

The Court first addresses the alleged retaliatory acts stemming from the EEO complaint filed in February 2006. Although Plaintiff filed her first EEO complaint in 2006, she was promoted into the Career Ladder Program in July 2007. The denial of Plaintiff's promotion to an EAS-19 did not occur until August 2008. The Court finds the extensive gap between the complaint filed in 2006 and the promotion denial and raise decrease in August 2008 and January 2009 to be too large to find a causal connection between them. This is particularly so in light of the fact that Plaintiff does not allege that any other retaliatory acts took place between February 2006 and August 2008. See, e.g., Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (finding no causal connection because five months elapsed between the protected activity and retaliatory acts, with no alleged retaliatory acts occurring in the interim). Therefore, the retaliation claim stemming from the 2006 EEO complaint fails the third prong of the prima facie test.

Plaintiff also argues that the denial of her raise reconsideration request in June 2009 was retaliation as a result of her second EEO complaint, which was filed in March 2009. As evidence of a causal connection between denial of Plaintiff's reconsideration request and the EEO complaint, Plaintiff cites to Jordan's comment during a meeting that Jordan "has applied for positions in the Postal Service and did not get them. She believed her blessings came from God and if she didn't get a promotion she would take it as a blessing from God and would not file an EEO Complaint." (Pl.'s Resp. Mot. Summ. J. 12). Plaintiff also points to Jordan's e-mail denying Plaintiff's reconsideration request because "there is no postal regulation permitting me to change an EAS promotional increase that has been finalized." In that e-mail, Jordan also stated, "I am also aware that an EEO has been

-14-

filed regarding this issue and I am certain that you can understand that it would be inappropriate for me to comment any further on this issue. As you are aware, the EEO procedures provide for an administrative judge who is independent of the Postal Service. This gives employees and their representatives the opportunity to present any evidence in support of their position and receive an impartial hearing."

The Court finds that no reasonable jury could find a causal link between the denial of Plaintiff's reconsideration request and her EEO complaint. The fact that Jordan indicated that she could no longer discuss the situation due to the EEO complaint does not suggest retaliatory intent. Rather, it merely suggests a desire to remain uninvolved with the EEO process. Moreover, Jordan's comments in the March 5, 2009 meeting cannot establish a causal link because Plaintiff did not file her EEO complaint until March 13, 2009. Because Jordan made her comment before the complaint was filed with the EEO, no causal link can be drawn between the two events.

Even presuming causal links between the retaliatory acts and the Plaintiff's EEO complaints, however, Plaintiff cannot succeed on a retaliation claim because Plaintiff did not have an objectively reasonable belief that she was opposing protected activity. As the Court has set forth in this Opinion, no reasonable person could conclude that Plaintiff had viable discrimination claims.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion. An appropriate order follows.

-15-